Walter K. KRAUTH, Jr., Theodore J. Mayer, William Miller, David E. Legere, Plaintiffs,

v.

EXECUTIVE TELECARD, LTD., Defendant.

No. 94 Civ. 7337 (RWS).

United States District Court, S.D. New York.

Dec. 13, 1994.

544

Sutherland, Asbill & Brennan (Michael J. Levin, Peter J. Anderson, S. Lawrence Polk, of counsel), New York City, for plaintiffs Krauth, Miller and Legere.

Teitelbaum, Hiller, Rodman, Paden and Hibsher, P.C. (Herbert Teitelbaum, Glenn B. Coleman, of counsel), New York City, for plaintiff Mayer.

Gusrae, Kaplan & Bruno (Cirino M. Bruno, Steven R. Haffner, of counsel), New York City, for defendant Executive Telecard Ltd.

## OPINION

SWEET, District Judge.

Plaintiffs, Walter K. Krauth, Jr. ("Krauth"), William Miller ("Miller") and David E. Legere ("Legere") (collectively, the "Committee") move: (1) to dismiss the amended counterclaim and third party complaint; (2) to hold the Defendant in contempt; (3) for sanctions against Defendant and its attorneys; and (4) to compel discovery. Plaintiff Theodore J. Mayer ("Mayer") moves to dismiss the amended counterclaims and third-party claims and to stay discovery which is predicated on these claims.

Plaintiffs' motions are granted in part and denied in part, as discussed below.

### Parties

Krauth is a resident of Jonesboro, Georgia and the single largest individual owner of EXTL stock. He and Miller, a resident of Bayside, New York, and Legere, a resident of Williamsburg, Virginia, formed the EXTL Shareholders Protective Committee, (the "Committee"), in September 1994 for the purpose of soliciting proxies for the election of a slate of directors opposed to those being proposed by management of EXTL. Mayer is a resident of Summit, New Jersey and until September 30 was the Treasurer of EXTL at which time he was discharged.

The defendant Executive Telecard, Ltd. ("EXTL" or the "Corporation") is a Delaware Corporation with its headquarters in Ontario, Canada.

### Prior Proceedings

The facts and prior proceedings in this action are fully set forth in the opinion of October 21, familiarity with which is assumed. A review of the prior proceedings relevant to this motion follows:

On October 12, 1994 the Committee filed an action seeking injunctive relief and expedited discovery following the withdrawal of a prior action initiated by EXTL. The Committee's action sought to enjoin EXTL from soliciting proxies in violation of §§ 13(d) and 14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act)", 15 U.S.C. §§ 78m(d) and 78n(a) and the rules and regulations of the Securities and Exchange Commission ("SEC"). EXTL sought similar relief with respect to the Committee's proposed proxies by way of counterclaim, mirroring its initial complaint.

The Answer and Counterclaims were served on October 14, 1994. The parties were advised that the court would consider the consolidation of a trial on the merits with the hearing on the preliminary injunctions. Expedited discovery proceeded.

From the outset, the Committee sought to obtain copies of Postal Telegraph and Telephone Agreements ("PTTs") held by Residual Corporation ("Residual") which represent collateral for an account receivable due to EXTL by Residual. These PTTs were the subject of a request for expedited discovery approved by this Court on October 12 and again on October 13, 1994.

On October 18, 1994 an evidentiary hearing consolidated with the trial was held. The state law counterclaims against counterclaim defendant Mayer, aligned as a plaintiff, were severed.

In an opinion dated October 21, 1994, the prayers for permanent injunction by both parties were denied in part and granted in part. Specifically, EXTL was "enjoined from soliciting proxies without disclosing the consultation by certain officers and directors with Bertoli concerning confidential and pending corporate matters [and] ... [t]he Committee [was] enjoined from soliciting proxies without clarifying the jurisdictional effect of [a certain] proposed spin-off [of EXTL]." Order, October 21, 1994. Leave was granted to make any further applications to obtain relief consistent with the findings and conclusions. No appeals or motions for reconsideration have been filed. Judgment was entered on December 12, 1994.

On November 2, 1994 there was a hearing on a letter motion requesting that the Court order defendants to set a date for the next Annual Shareholders meeting. Prior to that hearing, Defendants set a meeting date of January 5, 1995. The motion was "[d]enied as moot in view of the action taken by the defendants." *Memo Endorsed Order*, November 2, 1994.

On November 22, EXTL filed a pleading titled "Answer with Amended Counterclaims and Third Party Claims." ("Amended Answer"). In its Amended Answer, EXTL realleged its factual allegations against the Committee, added John Does I through XX as third party defendants, added a third state law claim for breach of contract against Mayer and a third party claim against John Does I through XX.

On December 7, pursuant to an order to show cause secured by the Committee, a hearing was held on the present motions.

On December 9, EXTL filed a complaint alleging security act violations by the Committee and moved by order to show cause for a preliminary injunction to bar the Committee from solicitation based on the alleged omission of material facts. *Executive Telecard, Ltd. v. Krauth*, 94 Civ. 8911 (RWS). A hearing on this application is scheduled for December 15 with expedited discovery granted.

### The Facts

In November, EXTL sent a Newsletter to its Shareholders. With reference to the Annual Meeting of Shareholders, it read:

Executive Telecard's Annual Meeting of Shareholders has been rescheduled to January 5, 1995. If you have received proxy materials in connection with this meeting

from a dissident shareholder group, your company's Board of Directors strongly urges that you do not make any action until you receive the company's proxy materials. These materials will be mailed to you shortly.

The newsletter is signed by William V. Moore, Chairman of EXTL. Below his signature the Newsletter reads:

Please Do Not Vote until you receive your company's proxy material. If you have any questions, please call our solicitor . . .

To date, EXTL's management has not submitted new proxy materials to the Securities Exchange Commission ("SEC").

### Discussion

### Motions to Dismiss Counterclaim and Amended Complaint

The hearing on October 18 and the subsequent order of October 21, 1994 resolved the issues with respect to the federal securities act counterclaims upon the facts there alleged. (Countercls. 1 and 2, Def.'s Answer and Countercl.). Given the statement in Defendant's Memorandum of Law that the amendments to the federal counterclaims were for informational purposes only (Def.'s Mem. at 16), the motion to dismiss these resolved claims as moot is granted.

In this proceeding EXTL has served its third-party complaint in contravention of Rules 13 of the Federal Rules of Civil Procedure, which provides in pertinent part:

... (e) Counterclaim Maturing or Acquired After the Pleading. Claim which either matured or was acquired by the pleader after serving a pleading may, with the permission of the court, be presented as a counterclaim by a supplemental pleading.

(f) Omitted Counterclaim. When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment.

In this proceeding EXTL served its original answer on October 14, 1994. Its additional counterclaims and third-party complaint was served on or about November 22,

1994. Permission of the court was therefore required under Rule 13(c).

Defendant has also served a supplemental pleading in contravention of Rule 15(d) of the Federal Rules of Civil Procedure, which, in relevant part, states:

Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. . . .

■ Defendant's Answer with Amended Counterclaims, in its section labelled "Subsequent Events," discusses the October 18 hearing and the October 21 order that followed. It is a supplemental pleading and as such requires leave of the court to file.

Defendants argue that the addition of additional third party defendants is done under Rule 20(a), Permissive Joinder of Parties, and as such does not require leave of the court or notice on motion. At this stage in the game, an addition of party not joined at the time of the original pleadings would more properly be done under Rule 21, Non-joinder of Parties.

In any event, since the Defendant is required to seek leave of the court for the supplemental pleadings and the additional counterclaim, the motion to dismiss the new and amended counterclaims for lack of permission to file is granted. Given the initiation of another action by EXTL, as sort forth above, it is anticipated that all issues should be presented in the event that this action is consolidated with the later action filed.

### Motion for Contempt

■ The October 21 Order enjoined EXTL "from soliciting proxies without disclosing the consultation by certain officers and directors with Bertoli concerning confidential and pending corporate matters." *Order*, October 21, 1994.

EXTL does not deny that the company mailed a newsletter to its shareholders after

the order of October 21, that included the following language:

> To Fellow Shareholders:
>
> ... Executive Telecard's Annual Meeting of Shareholders has been rescheduled to January 5, 1995. If you have received proxy materials in connection with this meeting from a dissident shareholder group, your company's Board of Directors strongly urges that you do not take any action until you receive the company's proxy materials. These materials will be mailed to you shortly.
>
> ... Please Do Not Vote until you receive your company's proxy material. If you have any questions, please call our solicitor
>
> ...

Nor does EXTL deny that the newsletter is signed by William V. Moore, Chairman of EXTL. Thus, the first question to be answered is whether or not the newsletter is governed by Section 14(a) of the Exchange Act and the Proxy rules.

The purpose of this language in the newsletter was to urge shareholders not to vote until such time as they had received revised materials from EXTL.

The definition of proxy solicitation as found in Rule 14a–1(*l*), promulgated pursuant to Section 14 of the Securities Exchange Act of 1934, is set forth as follows:

> (*l*) Solicitation. (1) The term "solicits" and "solicitation" include:
>
> (i) Any request for a proxy whether or not accompanied by or included in a form of proxy;
>
> (ii) Any request to execute or not to execute, or to revoke, a proxy; ...

The newsletter mailed to shareholders was a communication reasonably calculated to result in the withholding of proxies and as such was a solicitation. *See Canadian Javelin Limited v. Brooks,* 462 F.Supp. 190 (S.D.N.Y. 1978) (holding that mailings sent to shareholders that included newspaper articles unfavorable to management during a proxy fight were solicitations under section 14a–1(*l*)); *SEC v. Topping,* 85 F.Supp. 63, 64 (S.D.N.Y.1949) (stating that "any writings which are part of a continuous plan ending in solicitation and which prepare the way for its success" are within the scope of the Proxy Rules).

As interpreted by the Court of Appeals, a communication to stockholders may constitute a proxy solicitation, even if it does not contain an express request for a proxy, if it is "part of 'a continuous plan' intended to end in solicitation and to prepare the way for success." *Studebaker Corp. v. Gittlin,* 360 F.2d 692 (2d Cir.1966), quoting *SEC v. Okin,* 132 F.2d 784 (2d Cir.1943). This case *does* contain express reference to the proxy and thus is an easier case. One need not look to the underlying plan to find that the newsletter sent in this case was a solicitation.

■ The prerequisites for a finding of contempt are (1) the order which has been violated must be clear and unambiguous; (2) the violation must be proved by clear and convincing evidence; and (3) the violating party must be shown not to have been diligent in its attempts to comply with the order. *New York State National Organization for Women v. Terry,* 886 F.2d 1339, 1351 (2d Cir.1989).

The Committee has satisfactorily sustained its burden of proving contempt here.

■ The terms of the order are unambiguous: "EXTL will be enjoined from soliciting proxies without disclosing the consultation by certain officers and directors with Bertoli concerning ..."

Despite the unambiguous language of the order, EXTL sent out the newsletter, under the signature of the president of the company who no doubt had notice of the order, urging shareholders not to vote without mentioning the consultations with Bertoli. The explanation by Defendant's counsel that "the newsletter only requests that voting shareholders delay their decision, and does not request that they not vote at all, or revoke a previously issued proxy ... [and that they therefore did not believe that the] newsletter ... fall[s] within Rule 14a–1's definition of solicitation" does not allay concerns that the actions were deliberately taken without any effort to comply with the order.

The choice of the proper remedy to purge contempt is within the discretion of the court.

*United States v. United Mine Workers,* 330 U.S. 258, 305, 67 S.Ct. 677, 702, 91 L.Ed. 884 (1947); *New York State National Organization for Women v. Terry, supra,* 886 F.2d at 1353. The two purposes of sanctions, as described by the *United Mine Workers* Court, are (1) to compensate for past violations; and (2) to coerce future compliance. 330 U.S. at 303–04, 67 S.Ct. at 701–02.

While the press release of December 6, 1994 is not considered a solicitation by this Court, it is worthwhile noting that the press release acknowledged that "certain of [EXTL's] officers and directors have consulted with Richard O. Bertoli after his incarceration in a federal penitentiary." EXTL's noncompliance with the October 21 Order, however, does require notice of this order in order to purge the prior contempt committed by the mailing of the Newsletter in November.

### Motion to Compel Production of the PTT's

Counsel for EXTL conceded at the December 7 hearing that the Postal Telegraph and Telephone Agreements ("PTTs") that were the subject of an oral directive to produce issued by this Court on October 13, 1994 had not been given to Plaintiffs' Counsel. As the Court indicated at the hearing on December 7, Defendants are to produce all the PTTs that are available to them within 5 days of the entry of this order. At that time, Defendants will provide Plaintiffs with the locations of those that they cannot produce, but have located.

### Motion for Sanctions

The familiar prescriptions of Rule 11 were amended, effective December 1, 1993, so that the district court's power to impose sanctions is now considered "discretionary rather than mandatory." *Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir.1994); *First Interregional Equity Corp. v. Haughton,* 91 Civ. 0143, 1994 WL 364038 at *4, 1994 U.S.Dist. LEXIS 9477 at *10 (S.D.N.Y. July 12, 1994).

The amended Rule 11, provides, in relevant part:

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying to the best of the person's knowledge, information, and belief, forced after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

Fed.R.Civ.P. 11.

If the Court determines that Rule 11 has been violated, sanctions may be imposed pursuant to Rule 11(c), which provides for:

(c) Sanctions. If, after a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may ... impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

The Second Circuit has determined that Rule 11 sanctions should be "imposed with caution." *Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir.1994). "[A]ny and all doubts must be resolved in favor of the signer." *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985); see also *Rodick v. City of Schenectady,* 1 F.3d 1341, 1350 (2d Cir.1993) (" '[w]hen divining the point at which an argument turns from merely losing to losing and sanctionable, ... we have instructed district courts to resolve all doubts in favor of the signer.' ") (citations omitted).

As a result, the 1993 amendments to Rule 11 are viewed to "discourage imposition of monetary and other sanctions under the Rule where conduct does not 'reach the point of clear abuse.' " *Fontaine v. Ryan,* 849 F.Supp. 242, 245 (S.D.N.Y.1994) (quoting *Stern v. Leucadia National Corp.,* 844 F.2d 997, 1006 (2d Cir.1988)); see also *Mareno v. Jet Aviation of Am.,* 155 F.R.D. 74, 76 (S.D.N.Y.1994) (1993 amendment "downgrad[ed]" Rule 11 as weapon against litigation abuse).

The Committee contends that the Defendants violated the requirements of Rule

11 for three primary reasons: first, for failing to amend its counterclaims and adding third party defendants in conformance with the Federal Rules of Civil Procedure; second, for releasing a press release that announced the amended and additional complaints, which allegedly compounded the violation; and third, for allegedly filing the Amended Answer and Counterclaim and Third Party Complaint for the improper purpose of harassing the Plaintiffs.

The record before the Court does not support a sanctions determination at this stage. Turning first to the Amended Answer and Counterclaims, dismissed above, it appears that the Defendants attempted to amend their pleadings in light of additional information and perhaps because of new theories of liability. While this attempt failed for pleading deficiencies, it cannot be said from the record that these deficiencies were so blatant or egregious as to be considered sanctionable conduct.

While the press release might have been more artfully written or not written at all, it is not the sort of activity for which the courts customarily invoke Rule 11 sanctions. Accordingly, it would be inappropriate to levy sanctions regarding this claim.

Finally, as to the Committee's contention that these amendments were merely added in order to harass the Plaintiffs or to cause unnecessary delay, it is impossible at this stage to make such a determination, especially in light of the possibility that these amended claims may be amended using proper procedure in the near future. Without deciding the final fate of these claims, this filing does not warrant sanctions at this time.

The Plaintiff Committee's motion for sanctions must be denied at this time.

### Plaintiff Mayer's Motion to Stay Discovery

The depositions of Mr. Mayer and his family and any discovery requests that are based on information contained in the amended pleadings of Defendants may proceed in the event of an application to amend the counterclaims against him and in accordance with the instruction that this Court has given repeatedly, namely that there shall be no duplicative questions asked of persons deposed and that the issues relate to the state court actions absent further amendment. The same shall apply to document requests, they shall not duplicate requests already made and answered.

As to the timing of this discovery, to date no reason has been advanced for immediate discovery. In view of the burdens presently shouldered by the parties in connection with its anticipated December 15 hearing and the necessity for permission to file the counterclaims as set forth above, the deposition of Mayer on the state law claims will follow that hearing and the proper filing of the amended counterclaims.

### Conclusion

For the reasons discussed above, the motions to dismiss, to compel the production of PTTs and for contempt are granted, the motion for sanctions is denied and the motion to stay discovery is granted in part and denied in part.

It is so ordered.